Ott, Johnson & Ott, of Franklinton, for appellant. Benj. Moore Miller, of Covington, for appellee.

BREAUX, C. J. This is an action for damages in the sum of $5,000 for plaintiff's alleged illegal arrest on the 8th day of November, 1911, under the direction, it is charged, of the defendant company, an arrest made without probable cause. Plaintiff alleged that he was incarcerated on the 8th of November, 1911, until the 11th of that month and year, then placed in jail at Franklinton until the 15th day of November, without affidavit or warrant; released by the company on the day last stated. At Bogalusa the jail was unsanitary, confinement severe and hard. He avers the particulars of his arrest, and states that he was told on the night of the 7th of November of the year before mentioned, together with Harvey Pierson, he had broken electric light bulbs. He alleged that he was not guilty of the act charged, and that defendant was guilty of negligence in causing his arrest.

Defendant denied the averments of plaintiff, and averred that on the night of the 7th of November, 1911, the plaintiff, and others with him, came into its sawmill, maliciously broke its electric lights, was arrested therefor by the marshal of the incorporated town of Richardson, and placed in confinement. The superintendent of the defendant went to the office of the justice of the peace of the ward in which the alleged offense was committed, made affidavit, the warrant was issued by the committing officer, charging plaintiff with the offense committed, and afterward he was placed in jail.

This case and the case against Pierson, companion of Sharp, was decided against both by the judge without a jury.

Plaintiff, Sharp, was seen breaking the bulbs. It is true that only two were broken, as testified to by one of the witnesses. It was, none the less, an offense for which he should have been punished. Being guilty of an offense, he cannot be allowed damages. To use a trite expression, one must come into court with clean hands, and when he has wantonly destroyed property, he cannot well be rewarded for the act, although defendant's employés had him arrested without having first caused an affidavit to be made and a warrant to issue.

Such an omission on the part of any one who has another arrested would be sufficient to allow damages, but not to one who has destroyed his property in the manner and at the time that it appears here the plaintiff committed the malicious mischief with which he is charged.

We, therefore, will affirm the judgment appealed from.

For reasons assigned, the judgment of the district court is affirmed.

PROVOSTY, J., concurs in the decree.

---

(63 South. 757.)

No. 19,720.

KELLER et al. v. LOUISIANA WESTERN R. CO.

(Dec. 15, 1913.)

*(Syllabus by the Court.)*

1. MASTER AND SERVANT (§ 238*)—DEATH OF RAILROAD BRIDGEMAN—LIABILITY OF EMPLOYER.

Where an experienced railroad bridgeman, engaged in the work of rigging a scaffold in a manner of his own selection, fell from a cap of the bridge into the stream below, and was drowned, and the evidence tends to show that

the fall was due to the mode in which the bridgeman handled a plank, *held*, that the railroad company was not responsible for the accident.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 681, 743–748; Dec. Dig. § 238.*]

2. MASTER AND SERVANT (§ 107*)—DEATH OF BRIDGEMAN—NEGLIGENCE—RAILROADS.

The contention that it is the duty of a railroad company to maintain life-saving boats and appliances under every bridge on its line, where the water below is deep enough to drown persons who may fall from the superstructure, is supported neither by statute nor by authority.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 199–202, 212, 254, 255; Dec. Dig. § 107.*]

Appeal from the Eighteenth Judicial District Court, Parish of Acadia; William Campbell, Judge.

Action by Theophile Keller and others against the Louisiana Western Railroad Company. From judgment for plaintiffs, defendant appeals. Reversed and dismissed.

Storey & Pugh, of Crowley, for appellant. Howell & Caillouet, of Thibadaux, and Medlenka & Bruner, of Crowley, for appellees.

LAND, J. Plaintiffs sue for $22,063, damages for the death of their son, Octave Keller, an employé of the defendant, who, while working on a railroad bridge, fell into the water and was drowned.

The jury rendered a verdict in favor of the plaintiffs for $2,000, and the defendant has appealed from the judgment pursuant to the verdict.

[1] The theory of plaintiffs' case, as propounded in their petition, is that Octave Keller was ordered by the bridge foreman to go upon a certain scaffold, which projected over the waters of a deep bayou, to do certain repair work on the bridge; that the said Octave Keller obeyed the order, and while he was standing upon the scaffold engaged in work, the bottom plank or planks upon which he was standing slipped out of place or gave way, and he was precipitated into the bayou and drowned.

The petition charges that the scaffold was improperly and unsafely constructed, and was not a safe, fit, or proper place for a workman to stand upon, though it appeared to be properly and safely constructed.

The petition further charges that the defendant took no proper precautions to provide boats and ropes or other life-saving appliances in case of the occurrence of such an accident as happened to the said Octave Keller.

The answer avers, among other things, that the death of Octave Keller by drowning was due to his own fault, negligence, carelessness, and want of prudence in the discharge of his duties; that the said Keller at the time of the accident was engaged in making a swinging scaffold, and was standing on a 12″ x 14″ cap or stringer, making a hitch with a rope around a plank, 1½″ x 6″ x 14″ so as to swing said plank under the bridge; that while the said Keller was making or attempting to make said hitch, the other end of the plank shifted from the end of the ties, causing the said Keller to lose his balance and fall into the water, a distance of 15 feet.

The facts set up in the answer are substantially sustained by the testimony of plaintiffs' witnesses. Brocklen testified that he was at work on the same bridge about four feet from Keller, who was standing on one of the caps engaged in tying the end of the plank, which was to serve the purpose of a scaffold underneath the bridge, that Keller was straddling the plank and was in a stooping position, and that the other end of the plank slipped off the ties, and Keller lost his balance and fell overboard. McGinnis, whose duty it was to handle the other end of the plank, testified that he did not move his end, and that as soon as he saw the plank move, he cried out to Keller to "Look out!"

The evidence shows that Keller had tied one end of the plank to the bridge before it slipped, and that the plank fell to the water and hung suspended by the rope.

From the testimony of plaintiffs' witnesses there can be no reasonable doubt that the fall of Keller was caused by the slipping of the plank, which he was straddling at the time, and that the slipping was caused by the manner in which Keller handled the plank.

Keller was an experienced bridgeman, and when the assistant foreman gave an order to the crew to rig the scaffold, Keller being nearest to the point where the scaffold was required, undertook the task, and selected the manner of its performance.

We cannot perceive how, under the undisputed facts of the case, the defendant can be charged with negligence.

Keller, after he sank, rose twice, but merely showed the tips of his fingers on the second rise. The bridge crew did what they could to save him, but the time was too short.

[2] The learned counsel for the plaintiffs contend with much force and ability that the defendant was negligent in not having on hand life-saving appliances, such as lifeboats, lines, etc. A boat would have done no good unless it had been beneath the bridge and manned to rescue persons who might fall into the stream. Counsel has produced no authority for his contention that it is the duty of railroads to maintain life-saving boats and appliances under every bridge on their lines, where the water is deep enough to drown persons who may fall from the superstructure. Such is not the custom among railroads and the fact that defendant has maintained boats, for other purposes, at bridges under construction or repair, is without legal significance.

It is therefore ordered that the judgment below be reversed, and it is now ordered that plaintiffs' suit be dismissed, with costs.